UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**Plaintiff, Tess Miller, Christopher Jenkins**

    **[Plaintiffs,]**

                                          No. 1:21-cv-00473-KK-LF

VS.

**IPRA Custodian, APD Records Custodian,
Civilian Police Oversight Agency,
Civilian Police Oversight Agency Board,
Executive Director of CPOA Edward Harness,
Officers John/Jain [sic] DOE's (1 through unknown), Officer Martin Smith #2175,
Michael Geier Chief of [P]olice, Mayor of the City of Albuquerque, Tim Keller,
City Attorney Esteban A. Aguilar, Jr., Sgt. Kenny #2746,
Albuquerque Police Department[,]**

    **[Defendants.]**

**<u>DEFENDANTS ED HARNESS, MARTIN SMITH, TIM KELLER, ESTEBAN A. AGUILAR, SEAN KENNY, AND NON-SUABLE ENTITIES CIVILIAN POLICE OVERSIGHT AGENCY, CIVILIAN POLICE OVERSIGHT AGENCY BOARD, AND ALBUQUERQUE POLICE DEPARTMENT'S MOTION TO DISMISS AND FOR QUALIFIED IMMUNITY IN LIEU OF AN ANSWER</u>**

      **COME NOW** Defendants non-suable entity **Civilian Police Oversight Agency**, non-suable entity **Civilian Police Oversight Agency Board**, Executive Director of CPOA **Ed Harness**, Officer **Martin Smith** #2175, Mayor of the City of Albuquerque **Tim Keller**, City Attorney **Esteban A. Aguilar**, Jr., **Sgt. Kenny** #2746, and non-suable entity **Albuquerque Police Department** (hereinafter "City Defendants" or "Defendants"), by and through Managing City Attorney Kristin J. Dalton, and pursuant to Fed. R. Civ. P. 12 and D.N.M.LR-Civ. 7, hereby moves this Court for an Order dismissing Plaintiffs Tess Miller and Christopher Jenkins' ("Plaintiffs") claims against them, with prejudice.  Plaintiffs were contacted concerning this Motion, but no

response was received. Opposition is presumed. In support of their Motion, Defendants state as follows:

## INTRODUCTION

Plaintiffs filed their "Civil Complaint" ("Complaint") in the Second Judicial Court, County of Bernalillo, District of New Mexico, on April 21, 2021. [Doc. 1-1]  In their Complaint, Plaintiffs state that they brought the action "pursuant to 42 U.S.C. sections [sic] 1983 to redress the deprivation by Defendants . . . acting under color of state law, of rights secured to plaintiffs under the United States Constitution, including the First, Fourth, and Fourteenth Amendments, and under federal and state law." [Doc. 101, p. 3, ¶ 1]  According to Plaintiffs' Complaint, their claim(s) arise(s) from an investigation/welfare check of Plaintiffs' minor children by Albuquerque Police Department ("APD") Officer Smith and Sgt. Kenny following a tip that Plaintiffs' minor children were being neglected due to having inadequate food and drug abuse by Plaintiffs, their parents. [*Id.*, pp. 5-9, ¶¶ 8-47]  Plaintiffs further alleged that "they filled [sic] for 2 IPRA requests . . . and were denied after longer than a year of waiting" and that "the city violated IPRA." [*Id.*, p. 9, ¶¶ 48-49]  Finally, Plaintiffs allege that the CPOA "did not conduct a thorough and impartial investigation." [*Id.*, p. 10, ¶ 60]

Plaintiffs' Complaint fails to delineate any causes of action against Defendants. Nonetheless, it appears from Plaintiffs' allegations that they have attempted to bring the following causes of action: (1) unlawful search, and (2) IPRA violation.  [*See id., generally*]  With regard to Defendants CPOA, CPOA Board, APD, Harness, Keller, Aguilar, and Kenny, neither of these causes of action apply.  Plaintiffs made no allegations against Mayor Keller and Plaintiffs' Complaint fails to sufficiently plead facts to plausibly support a cause of action against the

aforementioned Defendants. Similarly, Plaintiffs' Complaint fails to sufficiently plead facts to support their First and Fourteenth Amendment claims or their IPRA claim. Even if Plaintiffs' IPRA claim was supported, Plaintiffs lack standing on one of the IPRA requests for which they have based their claim. Finally, with regard to Officer Smith, Plaintiffs have failed plead sufficient facts to plausibly support a claim against him and he is entitled to qualified immunity. For these reasons, this Court may grant this Motion to Dismiss and dismiss, with prejudice, the claims (if any) against Defendants, *inter alia*.

## STANDARD OF REVIEW

In ruling on a FED. R. CIV. P. 12(b)(6) motion to dismiss, the Court must accept the factual allegations of the complaint as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The question is not whether the plaintiff will ultimately prevail but whether the allegations entitled plaintiff to offer evidence to support the claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Am. Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977). Moreover, a complaint must state a claim of relief which is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). "[T]he pleading standard

Rule 8 announces . . . demands more than an unadorned, the defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Plaintiffs alleged that their civil rights were violated "pursuant to 42 U.S.C. sections [sic] 1983 . . . of rights secured to plaintiffs under the United States Constitution, including the First, Fourth, and Fourteenth Amendments and under federal and state law." Plaintiffs did not delineate specific causes of actions nor did they list what federal or state laws they claim that Defendants violated, with the exception of the general description above of "First, Fourth, and Fourteenth Amendment" violations.

Section 1983 provides a cause of action against individuals who, under color of state law, deprive a person "of any rights, privileges, or immunities secured by the Constitution and laws," including rights secured by federal statutes. 42 U.S.C. § 1983; *Southwest Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162, 1173 (10th Cir. 1999). Not all federal laws give rise to Section 1983 liability, however. In order for an individual to avail themselves of a Section 1983 claims to remedy a violation of federal statute, the individual must assert the violation of a federal right, not merely a violation of federal law. *Southwest Air Ambulance*, 268 F.3d at 1173. Plaintiffs' Complaint can properly be summarily dismissed for their failure to assert a violation of a specific right. Without waiving this argument, Defendants turn to specific grounds for dismissal of Plaintiffs' Complaint. *Infra*.

I. **NON-SUABLE ENTITY DEFENDANTS CIVILIAN POLICE OVERSIGHT AGENCY, CIVILIAN POLICE OVERSIGHT AGENCY BOARD, AND ALBUQUERQUE POLICE DEPARTMENT SHOULD BE SUMMARILY DISMISSED**

Rule 12(b)(2) provides for dismissal when there is a "lack of jurisdiction over the person" or entity named as a party. Plaintiffs' claims against Defendants Civilian Police Oversight Agency ("CPOA"), Civilian Police Oversight Agency Board ("CPOA Board"), and Albuquerque Police Department ("APD") (collectively "entity Defendants") should be dismissed because they are not suable entities and thus, this Court lacks jurisdiction. Additionally, Plaintiffs have failed to state a claim for relief against the entity Defendants and their claims, if any, should be dismissed pursuant to Rule 12(b)(6). Plaintiffs failed to cite to any authority for which these entities could be sued and failed to allege that these entities were subject to suit. [*See* Complaint, Doc. 1-1, *generally*] The rules of civil procedure do not provide an avenue to effectuate service on the entity Defendants, further highlighting these parties' inability to be subject to suit. Plaintiffs failed to identify *what* the entity defendants did that was a violation of the law and/or what cause of action they would be subject to. Plaintiffs are not entitled to relief as against the entity Departments because they have not asserted plausible claims against them, and therefore, they should be dismissed.

The entity Defendants are administrative departments within the City of Albuquerque, which lack legal identities apart from the municipality itself. Therefore, this Court lacks jurisdiction over them. In a persuasive opinion, the Tenth Circuit indicated that APD was not a "suable entity under Section 1983" because it lacks a legal identity apart from the municipality itself. *Ketchum v. Albuquerque Police Department*, 958 F.2d 381 (10th Cir. March 12, 1992). This decision is consistent with decisions reached in the New Mexico District Court, which have

likewise concluded that APD and/or detention centers were not suable entities.  *See Apodaca v. State Adult Prob. & Parole*, 998 F.Supp.2d 1160, 1190 (D.N.M. 2014) (holding that "a detention center is not a suable entity in a § 1983 action."); *Louella Gonzales, et al. v. Jackie Morrow, et al.* CIV No. 93-1216 LG/WWD (D.N.M. Memorandum Opinion and Order filed October 25, 1994); *Gregory Romeo v. City of Albuquerque, et al.*, CIV No. 94-832 JP/LFG (D.N.M. Memorandum Opinion and Order filed October 4, 1994).

Other courts have also concluded that a municipal police department is not a separate, suable entity apart from the city under which it operates, but is merely a vehicle through which the city fulfills its functions.  *See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("The 'City of Denver Police Department' is not a separate suable entity, and the Complaint will be dismissed as to it."), *modified on other grounds*, 778 F.2d 553 (10th Cir. 1985), *remanded on other grounds*, 475 U.S. 1138 (1986), *remanded on other grounds*, 475 U.S. 1138 (1986), *vacated on other grounds*, 800 F.2d 230 (10th Cir. 1986); *see Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *stump v. Gates*, 777 F.Supp. 808 (D. Colo. 1991); *aff'd by*, 986 f.2d 1429 (10th Cir. 1993); *Post v. City of Fort Lauderdale*, 750 F.Supp. 1131 (S.D. Fla. 1990); *Williams v. Dayton Police Dept.*, 680 F.Supp. 1075, 1080 (S.D. Ohio 1987).  The same analysis applies to Defendants CPOA and CPOA Board; they do not have legal identities apart from the municipality and are likewise subject to dismissal.  There is no means to effectuate proper service on these administrative entities, further highlighting their lack of separate legal identities.  Based on the foregoing, this Court should dismiss Plaintiffs' claims against the entity Defendants with prejudice.

**II.   PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS TO PLAUSIBLY SUPPORT A CLAIM FOR RELIEF AGAINST DEFENDANTS HARNESS, KELLER, AGUILAR, AND KENNY[1]**

Plaintiffs have failed to meet the *Twombly* pleading standard by merely offering "labels and conclusions" and a "formulaic recitation of the elements of a cause of action" in their Complaint as against Defendants Harness, Keller, Aguilar, and Kenny. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' Complaint alleges that on September 5, 2019, "a county employee received an anonymous tip through there [sic] hotline" alleging that Plaintiffs were neglecting their children by not providing adequate food and that Plaintiffs were abusing drugs. [Doc. 1-1, ¶ 8] Based on that allegation, a social worker from the Department of Children and Family Services arrived to do a welfare check, but Plaintiff Miller refused to allow the social worker to check the children. [*Id.*, ¶¶ 9-18] Plaintiffs claim that Officer Smith arrived and insisted on checking on the children, ultimately resulting in Officer Smith entering their home to do the welfare check over Plaintiffs' objections. [*Id.*, ¶¶ 19-39]

Plaintiffs then claim that Sgt. Kenny arrived and took over the investigation, making Officer Smith "go to his patrol car or downstairs." [*Id.*, ¶¶ 43-45] Plaintiffs next allege that that

---

[1] To the extent that Plaintiffs have attempted to assert claims against APD, the Department of Children and Family Services ("CYFD") and/or the City of Albuquerque, those claims can be dismissed for the same reasons argued herein, *infra*, and/or *sua sponte* by this Court. As to APD, Plaintiffs alleged only that "if the ABQ police department did not rehire officer Martin Smith their family would never been terrorized." [Doc. 1-1, ¶ 81] As to CYFD, Plaintiffs have generally alleged that it "was and is a subdivision, entity, or administrative arm of the county of Bernalillo," and that a social worker attempted to investigate the neglect allegation and later determined it was unfounded.[Doc. 1-1, pp. 4-6, 12-13, ¶¶ 5, 8-18, 21, 86-88] However, CYFD was not listed in the caption and no summons was issued directed at CYFD. As to the City of Albuquerque ("the City"), Plaintiffs alleged that "The City was and is a public entity" and "The City does not professionally train their officers and government employees about the constitutional rights that go between parents and children" but fail to allege anything further. [Doc. 1-1, pp. 4, 12, ¶¶ 4, 82] These allegations fail to state claims upon which relief can be granted. *See Monell v. New York Dept. of Soc. Svcs.*, 436 U.S. 658, 694 (1978) (holding that a governmental entity cannot be liable unless the "execution of a government's policy or custom" inflicted the injury). Moreover, the City was not included in the caption to the Complaint and no summons was ever issued as to the City, further demonstrating that Plaintiffs did not intend for the City to be a party.

they[2] "filled [sic] for 2 IPRA requests" which were denied "after longer than a year of waiting" resulting in an IPRA violation. [*Id.*, ¶¶ 48-49] Plaintiffs allege that they filed a complaint with the Attorney General concerning the City's failure to provide the requested records and that the City "refused the Attorney General and plaintiff's request for body camera footage and 911 call[.]" [*Id.*, ¶ 52] As to Defendant Aguilar, Plaintiffs claim that "city attorney did not respond to plaintiff's response to the City's Attorneys [sic] response to IPRA complaint on 01-21-2021." [*Id.*, ¶¶ 55-56]

Next, Plaintiffs contend that they filed a complaint with CPOA and that "the CPOA did not conduct a thorough and impartial investigation" and that the "CPOA response statements lack actual merit if not falsified entirely to hinder the plaintiffs in seeking justice." [*Id.*, ¶¶ 58-64, 66] Plaintiffs further allege that the CPOA "wrongfully, prematurely, administratively closed the case" and that "the CPOA turns their civil rights into a crime in most of the statements made by CPOA in findings letter." [*Id.*, ¶¶ 71, 78] As to Defendant Harness, Plaintiffs alleged that he "admits to not having enough resources, employees." [*Id.*, ¶ 65]

Pursuant to *Twombly*, such factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A formulaic recitation of a cause of action's elements will not do." *Id.* Plaintiff has failed to allege facts upon which relief can be granted because Plaintiffs' factual allegations do not give way to causes of action against Defendants Harness, Aguilar, Kenny, or Mayor Keller. Defendants CPOA Board and Mayor Keller may be properly summarily dismissed.[3] With the exception of including these Defendants

---

[2] The exhibits to Plaintiffs' Complaint demonstrate that IPRA request #20-356 was made by Insima Padilla, not by Plaintiffs. [Doc. 1-1, p. 21] Plaintiffs do not have standing to bring a lawsuit for violation of the IPRA statute for IPRA request #20-356.

[3] Plaintiffs' claims, if any, against "IPRA custodian," "APD Records Custodian," and Chief Geier may likewise be dismissed and/or dismissed *sua sponte*. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citations omitted) ("Where a complaint fails to state a claim, and no amendment could cure the defect, a dismissal

in the caption, Plaintiffs failed to allege how the CPOA Board and/or Mayor Keller[4] are subject to suit and failed to allege any facts to support a claim against them.

Plaintiffs have not otherwise asserted actionable causes of action against Defendants Harness, Aguilar, and Kenny. The only specific facts that Plaintiffs offered was that (1) Sgt. Kenny "took over" an investigation for Officer Smith and directed Officer Smith to go to his car or downstairs; (2) Defendant Aguilar did not respond to Plaintiffs' response to an IPRA complaint, and (3) Defendant Harness admitted to not having enough resources or employees. None of these allegations support a cause of action against these Defendants under 42 U.S.C. § 1983 or the First, Fourth, or Fourteenth Amendments, which are the only causes of action listed by Plaintiffs. *See Iqbal*, 556 U.S. at 676-677 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *Respondeat superior*."). Therefore, this Court may properly dismiss, with prejudice, Plaintiffs' claims against Defendants Harness, Keller, Aguilar, and Kenny.

### III. PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS TO PLAUSIBLY SUPPORT A FIRST OR FOURTEENTH AMENDMENT CLAIM

In the first paragraph of their Complaint, Plaintiffs claimed that they were bringing claims pursuant to the First and Fourteenth Amendments, but then failed to allege any facts to support such claims. Plaintiffs failed to allege, with the exception of the first paragraph, any facts that would relate to the deprivation of a First or Fourteenth Amendment right. On its face, Plaintiffs' Complaint contains nothing related to a deprivation of a First or Fourteenth Amendment right and therefore, those claims can be properly dismissed.

---

*sua sponte* may be appropriate.") Plaintiffs have made no allegations pertaining to "IPRA Custodian," "APD Records Custodian," and/or Chief Geier in their Complaint.

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble[.]" U.S. Const. amend. I. Plaintiffs' Complaint is devoid of any allegation that their freedom of speech was abridged. To the contrary, Plaintiffs' Complaint references multiple instances where Plaintiffs asserted themselves to the Defendants throughout the course of events. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) (citing *Johanns v. Livestock Marketing Assn.*, 544 U.S. 550, 553 (2005) ("[T]he Government's own speech ... is exempt from First Amendment scrutiny"). "A government entity has the right to 'speak for itself.'" *Id.* (quoting *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229 (2000)). Indeed, "[i]t is the very business of government to favor and disfavor points of view[.]" *Nat'l Endowment for Arts v. Finley*, 524 U.S. 569, 598 (1998) (Scalia, J., concurring).

To assert a claim for First Amendment retaliation, a claimant must establish that: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (citations and internal quotation marks omitted). Plaintiffs have made no such allegations; therefore, their First Amendment claim, to the extent it existed in their Complaint, fails and can be properly dismissed with prejudice.

The Fourteenth Amendment provides in part: "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. There are two types of

constitutional protections provided for within the Fourteenth Amendment: substantive due process and procedural due process. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). Substantive due process "guarantees that the state will not deprive a person" of certain rights "no matter how fair the procedures are" used to make the decision. *Id.* Procedural due process "ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Id.* Nowhere in Plaintiffs' Complaint was it alleged that they were denied due process of law, either procedurally or substantively.  Plaintiffs have failed to state a claim upon which relief can be granted with regard to the Fourteenth Amendment and, therefore, Plaintiffs' claim, if any, for deprivation of rights under the Fourteenth Amendment, should be dismissed with prejudice.

**IV.   PLAINTIFFS DO NOT HAVE STANDING TO BRING AN IPRA CLAIM AND/OR HAVE THEY PLED SUFFICIENT FACTS TO PLAUSIBLY SUPPORT AN IPRA CLAIM**

In Plaintiffs' Complaint, they allege they "filled [sic] for 2 IPRA requests #20-356 and #20-7473 and were denied after longer than a year of waiting on a clear and reasonable response to the reasons why they are delaying and denying our right to view the evidence." [Doc. 1-1, p. 9, ¶ 48]  In their allegation, Plaintiffs refer to Exhibit 5 of their Complaint, pages 1 and 2.  Plaintiffs further alleged as follows pertaining to their IPRA claim:

> 49.   [T]he city violated IPRA when they refused to provide the public records requested by plaintiffs for a known lawsuit.  In a timely manner set forth by IPRA compliance guide. NMSA 1978 section 14-2-1 to -12.
> . . .
> 53.   [D]efendant's reasons for city to close case NMSA 1978, section 32A-4-33(A) is void due to NMSA 1978, section 32A-4-33(C).
> 54.   Plaintiffs allege The City tried to intimidate them with NMSA 1978, Section 32A-4-33(D). (see Ex.6 pg.#4).

[*Id.*, p. 9]

Plaintiffs' allegations pertaining to the IPRA violation refer to Exhibits 5 and 6 to Plaintiffs' Complaint.[5] In Exhibit 5, it is clear that IPRA Request #20-356 was sent by Insima Padilla. [Doc. 1-1, p. 21; *see also id.*, p. 33 (listing requestor as Insima Padilla)] Plaintiffs do not have standing to bring a claim to enforce IPRA or for a violation of IPRA with regard to Request #20-356. "To satisfy Article III of the Constitution, a plaintiff must have standing to bring a claim in federal court." *HEAL Utah v. PacifiCorp*, 375 F.Supp.3d 1231, 1241 (D. Utah 2019). "To establish standing, plaintiffs must show injury in fact, a causal relationship between the injury and the challenged action of the defendant, and a likelihood that the injury will be redressed by a favorable decision." *Faustin v. City, Cty. Of Denver, Colorado*, 268 F.3d 942, 947 (10th Cir. 2001) (citing *Byers v. City of Albuquerque,* 150 F.3d 1271, 1274 (10th Cir. 1998)). "Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983) (internal quotations omitted). "Plaintiffs must show they have sustained or are immediately in danger of sustaining some direct injury, and the injury or threat of injury must be real and immediate, not conjectural or hypothetical." *Id.* at 101–02.

In the present case, Plaintiffs have not demonstrated standing to bring a claim for an IPRA request submitted by another person, Insima Padilla. Plaintiffs have not alleged that they have standing to enforce IPRA on a request made Ms. Padilla. Plaintiffs cannot demonstrate that they suffered an injury-in-fact because neither Plaintiff was the IPRA requestor. Plaintiffs have not

---

[5] For purposes of this Motion only, Defendants are not raising disputes as to the authenticity of the documents attached to Plaintiffs' Complaint. Therefore, this Court may consider the exhibits to Plaintiffs' Complaint in deciding the Motion to Dismiss. *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941–42 (10th Cir. 2002).

alleged that there is a "causal relationship between the injury and the challenged action of the defendant" as required by Tenth Circuit law. *Supra*. Finally, Plaintiffs have not alleged *which* Defendant they claim is liable for the alleged IPRA violation.  In short, Plaintiffs have not alleged a claim upon which relief can be granted and therefore, their claim pertaining to Request #20-356 should be dismissed with prejudice.

IPRA Request #20-7473 is addressed in detail in Exhibit 6.[6] [Doc. 1-1, pp. 27-_] In a response to the Attorney General, the City of Albuquerque[7] outlined the following with regard to Request #20-7473: (1) it *did* allow inspection of records, namely, the "email correspondence between [the ]IPRA office and Kennedy Kennedy and IVES[,]" [Doc. 1-1, p. 29] and (2) the City did deny the remainder of Request #20-7373 because "the records were produced during an investigation in anticipation of a neglect or abuse proceeding" which is protected by NMSA 1978, §32A-4-33(A). [Doc. 1-1, pp. 30-31].

With regard to Plaintiffs' allegations that the City refused to provide public records in a timely manner, that allegation is refuted by Plaintiffs' exhibits.  [*See* Doc. 1-1, p. 9, ¶ 49; *see id*., p. 30] In the City's response to the Attorney General, the City stated, with regard to Request #20-7473

> 20-7473 was received on October 15, 2020.  … The City acknowledge the request on October 20, . . . which is three business days after the request was received.  Due to the unique circumstances and delays caused by the COVID pandemic, the City deemed the request excessively burdensome on the same day it acknowledged the

---

[6] IPRA Request #20-0356 is also addressed in detail in Exhibit 6.  Defendants hereby incorporate by reference the argument made pertaining to IPRA Request #20-7473 and apply it to IPRA Request #20-0356 to the extent that this Court may determine that Plaintiffs have standing to bring a claim for an IPRA violation for Request #20-0356 as both IPRA requests had the same substance; namely, the photographs, video and/or audio recordings, reports, and warrants pertaining to the September 5, 2019 incident and Request #20-0356 was denied for the same reasons as Request #20-7473 was partially denied.

[7] As argued elsewhere in this Motion, the City of Albuquerque is not a Defendant in this lawsuit. *Supra*.  The City was not included in the caption of the Complaint, no summons was ever issued to the City, and Plaintiffs have not served the City with a lawsuit against it in this action. *Supra*.

> request. . . . The City produced the non-exempt record on January 14, 2021. . . . Concurrent with the production of the non-exempt records, the City sent a letter explaining its denial of the inspection of the other requested records. . . . These two actions completed the City's response which occurred within a reasonable period of time due to the extenuating circumstances of the COVID pandemic.

[*Id.*, p. 30]  Additionally, Plaintiffs' Exhibit 6 demonstrates that the documents requested by Plaintiff Jenkins was exempt pursuant to Section 32A-4-1 to -35, although Plaintiff Jenkins apparently does not challenge the City's denial pursuant to his allegations and does not indicate how any of the named Defendants are responsible.  Plaintiffs have not plead sufficient facts to plausibly support an IPRA claim because any factual allegations asserted are refuted by Plaintiffs' Exhibits, which demonstrate the basis upon which Plaintiffs' IPRA request was handled.

V. **PLAINTIFFS' CLAIM AGAINST OFFICER SMITH, IF ANY, IS SUBJECT TO DISMISSAL BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS TO PLAUSIBLY SUPPORT A CLAIM AGAINST HIM AND HE IS ENTITLED TO QUALIFIED IMMUNITY**

In Plaintiffs' Complaint, they specifically alleged the following against Officer Smith, following Plaintiff Miller's interaction with a social worker that arrived to investigate allegations of neglect of Plaintiffs' minor children:

> 20. Plaintiffs allege that officer Martin Smith was the first to arrive on scene.
> . . .
> 22. [O]fficer Martin Smith got offended at the fact that we were claiming infringement.
> 23. [F]emale social worker states that plaintiffs do not need to co-operate.  At which point officer Smith stated, "we are going to see the children". . . .
> 24. [T]hey requested even demanded officer Smith get a warrant.
> 25. [O]fficer Martin Smith intimidates them by getting closer and closer to their personal space making plaintiff Tess Miller's hands shake, and by claiming he does not need a warrant to enter their home when asked what the exigent circumstances are he refused to disclose, giving plaintiffs reason to believe he did not have any.
> 26. [O]fficer Martin Smith decided before any other officers arrived on scene that he wanted to execute an unwarranted search and attempted seizure of our home and underage kids.

27. [O]fficer Martin Smith was trying to get a reaction out of them with his scare tactics.
28. Plaintiffs allege that they refused to let officer Martin Smith in their home without a warrant / other officers present, in fear he could and would do anything to justify his action after witnessing his behavior during initial contact.
29. [T]he other officers arrived on scene and failed to gather enough information by not talking to a social worker and plaintiffs before deciding to side with officer Martin Smith and executing a no warrant search and seizure.
30. [O]fficer Martin Smith coerced Plaintiff Christopher Jenkins in giving him the house keys by saying "Let me in or I will kick the door in, or I have other ways".
31. [R]ight before officer Martin Smith opens the door, he states "they gave us permission to enter" Plaintiff Tess Miller then putts [sic] her hands up and states in a loud and clear voice "we do not give you permission to enter." . . .
32. Plaintiffs allege that they felt as if he knew he was not allowed in and that is why he stated that before attempting to open door.

. . .

40. [O]fficer Martin Smith was in control of the investigation and decided to want to take custody over the kids because of our decision to want to home school. . . .
41. [O]fficer Martin Smiths other reason for wanting to take the kids was due to a small pile of stuff swept up on edge of front door. He claimed due to condition of the home.

. . .

91. [P]olice officer defendants . . . fabricated evidence and made malicious allegations that minor plaintiffs where [sic] abused/neglected by their parents and failing to disclose exculpatory evidence; questioning and obtaining testimony from plaintiffs through the use of undue influence, coercion, and duress; and continuing to harass, annoy, threaten, and lie to plaintiffs, and otherwise interfere with Plaintiffs' lives, after any purported exigency or need ceased to exist. These acts exceeded the bounds of common decency usually tolerated by a civilized society.
92. [A]ll defendants in this complaint, knowingly and willfully, with malice and oppression, participated in, conspired with, approved of, and or aided and abetted with the intent to harm plaintiffs' fundamental liberties.

[Doc. 1-1, pp. 6-8, 13]

Officer Smith is entitled to qualified immunity on Plaintiffs' claim. In evaluating a qualified immunity defense in the context of a Rule 12(b)(6) motion to dismiss, courts "must

15

determine whether the plaintiff[s] pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 Fed. Appx. 573, 575 (10th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Plaintiffs have not pled sufficient facts demonstrating that they meet either prong of the qualified immunity analysis and therefore, this Court should dismiss their claim against Officer Smith, with prejudice.

Plaintiffs did not delineate a cause of action against Officer Smith – *i.e.* Plaintiffs did not claim that their home was unlawfully searched or that any other action of Officer Smith's was unlawful. Plaintiffs generally alleged that they were deprived of their rights under the "First, Fourth, and Fourteenth Amendments, and under federal and state law." [Doc. 1-1, p. 3] While Plaintiffs alleged that Officer Smith "fabricated evidence and made malicious allegations that minor plaintiffs where [sic] abused/neglected by their parents and failing to disclose exculpatory evidence; questioning and obtaining testimony from plaintiffs through the use of undue influence, coercion, and duress; and continuing to harass, annoy, threaten, and lie to plaintiffs, and otherwise interfere with Plaintiffs' lives, after any purported exigency or need ceased to exist[,]" Plaintiffs have failed to identify how this was a violation of a statutory or constitutional right.

To the extent that Plaintiffs have alleged facts that could be construed to state a claim that there was a warrantless search of their home, which Defendants do not concede, Officer Smith is still entitled to qualified immunity. Under federal jurisprudence, a warrantless search of a person's home is presumptively unreasonable and therefore a violation of constitutional rights. *McInerney v. King*, 791 F.3d 1224, 1231 (10th Cir. 2015) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."

(citations and internal quotation marks omitted)).  However, the need to respond to exigent circumstances is an exception to the warrant requirement.  *See, e.g., Payton v. New York*, 445 U.S. 573, 586 (1980).  Plaintiffs have not alleged that Officer Smith did not have exigent circumstances. [*See* Doc. 1-1, *generally*] Rather, Plaintiffs' Complaint contains allegations of physical neglect of minor children—insufficient food and drug use by Plaintiffs, the parents of the children, coupled with an attempted visit by a social worker, whereupon Plaintiffs refused the social worker's request to see the children and make sure there was adequate food.  [Doc. 1-1, pp. 5-6, ¶¶ 8-14]  Plaintiffs' Complaint not only fails to allege that Officer Smith had exigent circumstances, but provides the very basis for exigent circumstances.

Plaintiffs have also not alleged that the law was clearly established such that every "reasonable officer would understand that what he is doing violates that right." *See Mecham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir.2007).  To the contrary, it is clearly established that where exigent circumstances exist, officers are entitled to enter a person's home.  *Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1068-1072 (10th Cir. 2010). In the present case, it would not have been clear to Officer Smith, and Plaintiffs have not alleged that it was, that his conduct was unlawful in the situation.  *See Thomas v. Durastanti*, 607 f.3d 655, 669 (10th Cir. 2010).  In deciding whether a precedent provides fair notice to a defendant, the United States Supreme Court has instructed court "not to define clearly established law at a high level of generality."  *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018).  Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.*

It is not beyond debate that faced with allegations of physical neglect—insufficient food and drug abuse by the parents—along with the parents' refusal to allow a social worker to see the children and make sure there was adequate food, exigent circumstances did not exist that would allow an officer entry to the home to check on the children. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" and Plaintiffs have not alleged that Officer Smith fell into either category. *Aldaba v. Pickens*, 844 f.3d 870, 877 (10th Cir. 2016). Plaintiffs failed to allege that Officer Smith violated clearly established law and have failed to provide authority that it would have been clear to Officer Smith that he was not entitled to perform a welfare check based on exigent circumstances. Therefore, Plaintiffs' claim, if any, against Officer Smith fails and can be properly dismissed, with prejudice, but this Court.

**WHEREFORE** Defendants non-suable entity Civilian Police Oversight Agency, non-suable entity Civilian Police Oversight Agency Board, Executive Director of CPOA Ed Harness, Officer Martin Smith #2175, Mayor of the City of Albuquerque Tim Keller, City Attorney Esteban A. Aguilar, Jr., Sgt. Kenny #2746, and non-suable entity Albuquerque Police Department respectfully request that this court grant their Motion to Dismiss, dismiss Plaintiffs' claims against them with prejudice, award them attorney's fees and costs, and for all other and further relief this Court deems just and proper.

Respectfully submitted,

**CITY OF ALBUQUERQUE**
Esteban A. Aguilar, Jr., City Attorney

/s/ *Kristin J. Dalton*
Kristin J. Dalton
Managing City Attorney

P.O. Box 2248
Albuquerque, New Mexico 87103
(505) 768-4500 / F: (505) 768-4505

*Attorney for Defendants Officer Martin Smith, Sgt. Sean Kenny, Mayor Timothy Keller, City Attorney Esteban A. Aguilar, Jr., Executive Director of Civilian Police Oversight Agency Edward Harness, non-suable entity Civilian Police Oversight Agency, non-suable entity Civilian Police Oversight Agency Board, and non-suable entity Albuquerque Police Department*

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document was filed via the Court's CM/ECF system and mailed via U.S. Mail to the following:

Tess Miller
577 Tramway Apt. #139
Albuquerque, NM 87123
(505) 545-3741

and

Christopher Jenkins
577 Tramway Apt. #139
Albuquerque, NM 87123
(505) 545-3741

*Pro Se Plaintiffs*

on this 28th day of May, 2021.

/s/ *Kristin J. Dalton*
Kristin J. Dalton, Managing City Attorney